**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| BRIAN EAST, | ) CASE NO. 1:20-cv-02643 |
| Plaintiff, | ) JUDGE J. PHILIP CALABRESE |
| v. | ) MAGISTRATE JUDGE DAVID A. RUIZ |
| ABARTA COCA-COLA BEVERAGES, LLC, | ) **REPORT & RECOMMENDATION** |
| Defendant. | ) |

## I. Procedural History

Plaintiff Brian East (Plaintiff) commenced this action in the Cuyahoga County Court of Common Pleas against Defendant Abarta Coca-Cola Beverages, LLC (Defendant) asserting one cause of action: race discrimination in violation of Ohio Revised Code (O.R.C.) § 4412. (R. 1-1). On November 24, 2020, Defendant removed this action to federal court alleging the complaint contains federal claims. (R. 1, PageID# 2). On December 1, 2020 Defendant filed its Answer. (R. 4). On February 16, 2021, Plaintiff filed an Amended Complaint alleging the following causes of action: (1) race discrimination in violation of Title VII; and (2) race discrimination in violation of O.R.C. § 4112. (R. 9). On March 23, 2021, Defendant filed its Answer to the Amended Complaint. (R. 11). On April 1, 2021, Plaintiff's counsel withdrew from representation (R. 12), and Plaintiff is now proceeding *pro se*. On April 14, 2021, this matter was referred to the undersigned Magistrate Judge to "hear and decide all pretrial matters not dispositive of any party's claim or defense …[and,] to handle all pretrial matters, including the preparation of a

report and recommendation on any dispositive motions." On June 1, 2021, Defendant filed a motion for summary judgment. (R. 15). During a telephone conference on June 2, 2021, Plaintiff indicated his desire to continue with the present action. It was explained to him that he had thirty days to file a response to the motion for summary judgment. (R. 16). As of this date, Plaintiff has not filed any response or moved for an extension of time to do so. For the reasons set forth below, it is recommended that the motion for summary judgment (R. 15) be GRANTED.

## II. Summary of Key Facts[1]

### A. Plaintiff's Past Positions and Defendant's Acquisition of Cleveland Coca-Cola

Plaintiff was hired in 1995 by the Cleveland Coca-Cola Bottling Company, LLC ("Cleveland Coca-Cola") as a general laborer, an hourly union position, and paid in accordance with the pay scale set forth in the collective bargaining agreement. (R. 14-1, East Depo. at 12-14, 29, 35-36). Plaintiff was promoted to a syrup mixer in 1998 and received a pay increase per the union pay scale. (R. 14-1, East Depo. at 36, 85-86; Exh. C, PageID# 160).

Plaintiff was promoted to the position of a "Lab Tech" or "quality assurance technician" in July of 2007, a non-union position with an annual salary of $40,700. (R. 14-1, East Depo. at 36; Exh. D, PageID# 161). Five months later, Plaintiff received a merit increase and his salary became $42,500. (R. 14-1, Exh. E, PageID# 162). In this position, Plaintiff conducted laboratory testing, including water systems tests, torque testing, carbonation checks, and seam checks, and served as a backup syrup mixer. (R. 14, East Depo. at 90-93). East did not supervise anyone in this role, and was himself supervised by Ken Solomon. (R. 14-1, East Depo. at 93).

On February 2, 2015, Plaintiff was promoted to the position of a Quality Assurance

---

[1] As Plaintiff had not filed an opposition brief pointing to any facts, the court's recitation is based on the depositions, declarations, and exhibits referenced in Defendant's brief.

Supervisor with an annual salary of $52,515. (R. 14-1, East Depo. at 37, 99; Exh. F, PageID# 163). Plaintiff testified that both he and Jason Wypasek reported to Ken Solomon, and he did not consider Wypasek his immediate supervisor. (R. 14, East Depo. at 100-101). By contrast, the payroll change notice indicates that Wypasek was indeed Plaintiff's immediate supervisor. (R. 14-1, Exh. F, PageID# 163). Plaintiff continued as a quality assurance supervisor until April of 2017. (R. 14-1, East Depo. at 37).

Before the sale of Cleveland Coca-Cola to Defendant ABARTA, the Cleveland facility ceased production operations in 2017, and Plaintiff became a night shift loading supervisor. (R. 14-1. East Depo. at 37, 111-112; R. 15-2, Evans Decl. ¶6). As a night loading supervisor, Plaintiff was responsible for a team of approximately 20 to 25 employees and reported to warehouse manager Gary Wasil. (R. 14-1, East Depo. at 123; R. 15-2, Evans Decl. ¶8).[2] In Plaintiff's 2017 performance evaluation, Wasil rated him as "Below Expectations" in several categories, including prioritizing and organization, quality of work, and resourcefulness. (R. 14-1, East Depo. at 122; Exh. I, PageID# 167-168). Plaintiff met with Wasil and Todd Evans, Defendant's Human Resources Manager, to discuss his 2017 performance review. (ECF No. # 14, Ex. 1 at 114; R. 15-2, Evans Decl. ¶9). Wasil thought Plaintiff was "too wishy-washy with his subordinates, not firm enough, and created conflict amongst subordinates because he was lenient with some and firm with others." (R. 15-2, Evans Decl. ¶9). Plaintiff testified that he was told he only received a one-percent raise due to his poor performance evaluation. (R. 14-1, East Depo. at 114, 125; R. 15-2, Evans Decl. ¶10).

Defendant is a sales, manufacturing, service and distribution company headquartered in

---

[2] Todd Evans is the Senior Human Resources Manager at Defendant ABARTA, and is the custodian of employee personnel records. (R. 15-2).

Pittsburgh, Pennsylvania whose product lines include soft-drinks, juices, energy drinks, waters, enhanced waters and iced teas. (R. 15-2, Exh. 1; Decl. of Evans at ¶4). on January 27, 2018, Defendant acquired the Cleveland Coca-Cola bottling facility, where Plaintiff was employed. (R. 15-2, Exh. 1; Decl. of Evans at ¶5).

**B. Plaintiff Becomes a Warehouse Supervisor**

In April of 2018, production operations resumed at the Cleveland production plant. (R. 15-2, Evans Decl. ¶12). Plaintiff was transferred back to the production department where he resumed his quality assurance role in the laboratory, and received the newly created job classification title of warehouse supervisor. (R. 14-1, East Depo. at 123; R. 15-2, Evans Decl. ¶12). His salary remained unchanged. *Id*. According to Evans, "warehouse supervisor" is a generic title used by Defendant and is not indicative of a specific role. (R. 15-2, Evans Decl. ¶13). Plaintiff resumed many of his former production job duties. (R. 14-1, East Depo. at 53-56, 90-91).

When Plaintiff returned to the production department in April 2018, the Quality Assurance Technician position was eliminated. (R. 14-1, East Depo. at 41; R. 15-2, Evans Decl. ¶14). According to Evans, no other employees reported directly to Plaintiff at this time. (R. 15-2, Evans Decl. ¶14). Plaintiff acknowledged that he did not evaluate any employees "on paper," but asserted that six employees reported directly to him. (R. 14-1, East Depo. at 41-42). Plaintiff testified that he reported to Robert Ruppe, the production manager, but stated that he was the supervisor in charge of the production department. (R. 14-1, East Depo. at 44-45). In his declaration, Evans states that Plaintiff was permitted to give production associates direction, but that all employees, including Plaintiff, reported directly to Ruppe. (R. 15-2, Evans Decl. ¶17).

Ruppe conducted Plaintiff's performance evaluations for 2018 and 2019. (R. 14-1, East Depo. at 137; Exhs. J & K, PageID# 169-175). In 2018, Plaintiff was rated as "meets expectations" in all categories. (R. 14-1, Exh. J, PageID# 169-171). In 2019, Plaintiff was rated as "below expectations" in several categories, including corporate efficiency, prioritizing and organization, and resourcefulness. (R. 14-1, Ex. 1 at 137-139; Exh. K, PageID# 172-175). Plaintiff, however, received three pay increases while a warehouse supervisor, before filing his lawsuit, resulting in a salary at the time of this lawsuit of $61,530. (R. 15-2, Evans Decl. ¶18).

Four of Defendant's employees hold the title of warehouse supervisor—"Three Warehouse Supervisors are Black, and one is Caucasian." *Id*. at ¶19. According to Evans, the responsibilities and qualifications of each warehouse supervisor vary significantly, and the salaries range from $48,500 to $77,200 based on factors such as experience, job duties and responsibilities, and performance. *Id*. at ¶20. Plaintiff is the only warehouse supervisor in a quality assurance role working in the laboratory and overseeing the production line. *Id*. at ¶21.

During Plaintiff's deposition, he identified Wypasek as a comparable employee who Defendant allegedly treated more favorably—the only Caucasian employee holding the title of warehouse supervisor. (R. 14-1, East Depo. at 149, 166; R. 15-2, Evans Decl. ¶19).

**C. Meetings**

Part of Plaintiff's race discrimination claim is based on his alleged exclusion from workplace meetings. (R. 14-1, East Depo. at 10). According to Evans, Distribution Center Managers ("DCMs") conduct regular planning meetings at Defendant's various distribution centers. (R. 15-2, Evans Decl. ¶26). Since 2018, the Cleveland facility has had three DCMs. *Id*. Defendant's current DCM in Cleveland, Tom Stroh, was appointed in November of 2020. *Id*.

Stroh conducts three regular planning meetings: a Sales and Inventory Update;[3] a weekly forecasting telephonic conference,[4] and Daily Operations Meetings (*i.e.*, "Cadence Meetings"). (R. 15-2, Evans Decl. ¶27). Evans states that Plaintiff is invited to meetings that pertain to his job function. *Id.* Stroh expanded the cadence meetings to include all production staff, and "[a]ll operations supervisors, including East, are invited to attend the daily Cadence Meetings." (R. 15-2, Evans Decl. ¶30). Plaintiff stated that he was not invited to Cadence Meetings until after he filed charges. (R. 14-1, East Depo. at 68-69). Plaintiff acknowledged in his deposition that he had no knowledge "what Wypasek or other Caucasian supervisors or what meetings they go to." (R. 14-1, East Depo. at 163).

**D. Training Opportunities**

Part of Plaintiff's race discrimination claim is based on an alleged deprivation of training opportunities. (R. 14-1, East Depo. at 10). When asked what training Plaintiff believes he has not received Plaintiff responded: "I don't know." (R. 14-1, East Depo. at 165). He also acknowledged he has does not have "any facts" to "support a claim that anybody who was given training was because they were white …." *Id*. Since 2017, Plaintiff could not identify "any training that was given to white employees that was not offered" to him. (R. 14-1, East Depo. at 28). Plaintiff acknowledges having received training for CPR, operating tow motors and

---

[3] "The purpose of the weekly Sales and Inventory Update is for sales management, distribution management, and the inventory clerks to discuss advertisement activity and inventory. Neither East nor Wypasek attend these weekly Updates, but Ruppe, the Production Manager, and Amy Longenbach ("Longenbach"), the Warehouse Manager, do attend." (R. 15-2, Evans Decl. ¶28).
[4] "The purpose of the weekly forecasting call is for the product supply team to report what products ABARTA is receiving in the upcoming weeks. Longenbach, Ruppe, Stroh, and Wypasek participate in the forecasting calls. Wypasek oversees the crew responsible for receiving new product; therefore, his attendance is necessary. East's attendance is not necessary because his job function is unrelated to the supply chain." (R. 15-2, Evans Decl. ¶29).

6

forklifts, and regarding discrimination and sexual harassment. (R. 14-1, East Depo. at 16-17). Plaintiff testified that before November 2019, he never "inquired about what training might be available[,]" he "can't recall" "ever mak[ing] any request for training[,]" and he was never denied a request for any type of additional training. (R. 14-1, East Depo. at 25). In November of 2019, he requested additional training although at the time he "couldn't specify what type of training [he] thought [he] needed, [he] just generically asked for more training[;]" and during his deposition he testified that he could not "identify…any type of specific training that [he] believe[d he] needed[.]" *Id*. at 1, 25-28.

### III. Summary Judgment Standard

Summary judgment is appropriate only if the moving party demonstrates there is no genuine dispute of material fact on an issue that would entitle the movant to judgment as a matter of law. Fed. R. Civ. P. 56(a). All evidence must be viewed in the light most favorable to the nonmovant, *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008), and all reasonable inferences are drawn in the non-movant's favor. *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 535 (6th Cir. 2014). A factual dispute is only genuine, however, if a reasonable jury could resolve the dispute and return a verdict in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A disputed fact is material only if its resolution might affect the outcome of the case under the governing substantive law. *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013). Where the moving party has met its burden, the nonmoving party "may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing Rule 56 and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

"It is the law of this circuit that Rule 56 requires a court, even where a motion for summary judgment is unopposed, to determine that the moving party has established a right to relief as a matter of law and that no genuine issue of material fact exists before the court can award summary judgment." *Sutton v. United States*, 922 F.2d 841 at n. 1 (6th Cir. 1991). The "district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded. The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged his initial burden." *Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir. 1998) (internal quotations omitted). However, "[w]here the nonmoving party fails to respond to the motion for summary judgment, the trial court is under no obligation to 'search the entire record to establish that it is bereft of a genuine issue of material fact.'" *In re St. Clair Clinic, Inc.*, 73 F.3d 362 (6th Cir. 1996) (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989)). Instead, "a court's reliance on the facts advanced by the movant is proper and sufficient when a motion for summary judgment is unopposed." *Cacevic v. City of Hazel Park*, 226 F.3d 483, 491 (6th Cir. 2000) (internal quotation marks omitted) (quoting *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992) (citing dozens of decisions holding the same)).

### IV. Law and Analysis

**A. Title VII**

In Count One of the Amended Complaint, Plaintiff alleges Defendant treats him "differently than white employees in the same position" and that Defendant "discriminat[es] against [him] in respect to the terms and conditions of his employment, on the basis of race" in violation of Title VII. (R. 9, PageID# 51).

In a Title VII action, a plaintiff can establish race discrimination "either by introducing

direct evidence of discrimination or by proving inferential and circumstantial evidence which would support an inference of discrimination." *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997). In the case at bar, Plaintiff has not identified any direct evidence of discrimination, and, therefore, this action involves a circumstantial evidence claim.[5]

In order to establish a *prima facie* claim based on circumstantial evidence, Plaintiff must satisfy the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). "Where there is no direct evidence of race discrimination, a plaintiff may prove a *prima facie* case of racial discrimination by showing that [he] (1) is a member of a protected class, (2) was qualified for the job, (3) suffered an adverse employment action, and (4) was treated differently than similarly situated members outside the protected class." *Vitt v. City of Cincinnati*, 97 Fed. Appx. 634, 639 (6th Cir. 2004) (citations omitted). If a plaintiff establishes a *prima facie* case, the burden shifts to the employer to demonstrate a legitimate, non-discriminatory reason for the adverse employment action. *See, e.g.*, *McDaniels v. Plymouth-Canton Cmty. Sch.*, 755 Fed. App'x 461, 469 (6th Cir. 2018) (*citing Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1082 (6th Cir. 1994)).[6] If the employer meets its burden, the plaintiff must then show that the employer's stated reasons are a pretext — "*i.e.* that the employer's explanation was fabricated to conceal an illegal motive." *McDaniels,*

---

[5] Direct evidence is "evidence that proves the existence of a fact without requiring any inferences." *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 523 (6th Cir. 2007) (overruled on other grounds) (citation omitted)). Direct evidence includes comments "from the lips" of the employer "proclaiming his or her ... animus." *Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998) (citation omitted). *See also Coburn v. Rockwell Automation, Inc.*, 238 Fed. Appx. 112, 116 (6th Cir. 2007) (stating that "direct evidence is found ... where a statement by an employer directly shows there is a discriminatory motive.") A discriminatory comment is attributable to the employer when it is made by a "decision maker." *Id.* at 117-118.

[6] *Manzer* was overruled on other grounds. *See Geiger v. Tower Automotive*, 579 F.3d 614 (6th Cir. 2009).

755 Fed. App'x at 469 (citations omitted).

"On a motion for summary judgment, a district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry." *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000). "Although the burdens of production shift, 'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Macy v. Hopkins County Sch. Bd. of Educ.*, 484 F.3d 357, 364 (6th Cir. 2007) (citations omitted).

**1. Wage Discrimination Based on Race**

Defendant contends that Plaintiff cannot establish a claim for disparate pay based on his race. (R. 15-1, PageID# 197-198). Specifically, Defendant maintains that Plaintiff cannot establish a *prima facie* case of wage discrimination because he does not perform substantially equal work to his purported comparator, Wypasek. *Id*. As explained by another court of this district:

> To establishes [sic] a prima facie case of wage discrimination based on race, plaintiffs must show membership in a protected class, and that the employer paid different wages to an employee not in the protected class **for substantially equal work**. *See Anderson v. Zubieta,* 180 F.3d 329, 338-40 (D.C. Cir. 1999); *see also Timmer v. Mich. Dep't of Comm.,* 104 F.3d 833, 843 (6th Cir. 1997) (outlining the prima facie case of sex-based wage discrimination); *Medrano v. MCDR, Inc.,* 366 F.Supp.2d 625, 636 (W.D. Tenn. 2005) (citing *Anderson v. Zubieta* in describing the prima facie case of race-based wage discrimination). The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the pay differential, such as seniority. *Anderson,* 180 F.3d at 338.

*Quinn-Hunt v. Bennett Enterprises, Inc.*, No. 3:02CV7195, 2005 WL 2174053, at *4 (N.D. Ohio Sept. 7, 2005) (emphasis added), *aff'd,* 211 Fed. App'x 452 (6th Cir. 2006).

The parties do not dispute that Plaintiff was a member of a protected class. While acknowledging that Plaintiff and Wypasek "both hold the generic title of Warehouse

Supervisor," Defendant asserts that "Wypasek's responsibilities and qualifications far exceed [Plaintiff's] responsibilities and qualifications. East is essentially a laboratory technician responsible for quality assurance of ABARTA's product. Unlike East, Wypasek serves in a true supervisory role … [with] 12 direct reports and oversees the receiving crew, the team that tracks inventory, and the person responsible for verifying truck loads." (R. 15-1, PageID# 199). Defendant further points out that "Wypasek is also responsible for supply chain tracking[,]" while Plaintiff does not have any of these supervisory duties. *Id*. Due to the difference in job responsibilities, Defendant asserts that Plaintiff and Wypasek's job duties are "entirely different" despite their shared job title. *Id*. In other words, it is Defendant's position that Plaintiff and Wypasek, the only comparator alleged by Plaintiff, do *not* perform substantially equal work.

In *Conti v. Universal Enterprises, Inc.*, the Sixth Circuit Court of Appeals found that where the evidence distinguishes the comparator's job duties from a plaintiff's position, "any possible inference that [the] jobs were equal" is negated. 50 Fed. App'x 690, 696-697 (6th Cir. 2002) ("Resolution of a claim under the Equal Pay Act depends not on job titles or classifications but on actual job requirements and performance.") (citing 29 C.F.R. § 1620.13(e)); *see also Thomas v. Owen Elec. Coop., Inc.*, 121 Fed. App'x 598, 602 (6th Cir. 2005) (finding evidence supported the district court's conclusion that two dispatch positions were not comparable where one had "greater technical and supervisory responsibilities" than the plaintiff's position). "It is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that the 'comparables' are similarly situated in all respects." *Clayton v. Meijer, Inc.*, 281 F.3d 605, 610–611 (6th Cir. 2002) (citations omitted); *accord Giles v. Norman Noble, Inc*., 88 Fed. App'x 890, 894 (6th Cir. 2004).

Defendant argues that there is a dearth of evidence that Plaintiff was treated less favorably

than a similarly-situated employee outside of his protected class, as Wypasek was not sufficiently similarly situated. After reviewing the evidence, the court agrees. Wypasek is *not* an apt comparator because he had job duties, qualifications, and responsibilities that significantly varied from Plaintiff. Notably, Defendant has pointed to evidence of record showing the following concerning Wypasek. (Tr. 15-1, PageID# 194). On November 19, 2001, Wypasek was promoted to Quality Assurance Supervisor. (R. 15-2, Evans Decl. ¶22). By comparison, Plaintiff was promoted to the position of a Quality Assurance Supervisor in 2015, almost fourteen years later.[7] (R. 14-1, East Depo. at 37, 99; Exh. F, PageID# 163). The payroll change notice from Plaintiff's 2015 promotion indicated that Wypasek was Plaintiff's immediate supervisor. (R. 14-1, Exh. F, PageID# 163). On May 4, 2009, Wypasek was promoted to Production Manager, a position never held by Plaintiff. (R. 15-2, Evans Decl. ¶ 22). On January 20, 2014, Wypasek was transferred to the role of Quality Assurance Manager. (R. 15-2, Evans Decl. ¶ 22). On April 24, 2017, Wypasek was transferred to the role of Supply Chain Manager when Cleveland Coca-Cola ceased production operations with an annual salary was $71,800. (R. 15-2, Evans Decl. ¶22). In January 2018, the Supply Chain Manager position was eliminated as part of the reorganization that occurred after Defendant bought the company. *Id*. at ¶23. Wypasek's title was changed to Warehouse Supervisor, but his duties and salary remained the same despite the different title. *Id*. These responsibilities included supply chain tracking and ordering, where Wypasek has twelve direct reports; oversight of the daytime receiving crew; oversight of the team that tracks inventory; and oversight of the person responsible for verifying truck loads. *Id*. at ¶24.

---

[7] During his deposition, Plaintiff agrees that Wypasek has almost four times more supervisory experience at Coca-Cola than he does. (R. 14-1, East Depo. at 162).

Plaintiff has failed to establish a *prima facie* case of wage discrimination, as he is unable to establish that he and Wypasek perform substantially equal work. Again, to establish a *prima facie* case of wage discrimination, "plaintiffs must show that their employer pays different wages to employees of opposite sexes or races for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." *Patterson v. Best Buy Co.*, No. 1:13-cv-49, 2015 WL 248015, 2015 U.S. Dist. LEXIS 6153, at *17 (S.D. Ohio Jan. 20, 2015) (citing *Beck-Wilson v. Principi*, 441 F.3d 353, 359 (6th Cir. 2006)). The evidence supports Defendant's contentions that Wypasek's responsibilities and qualifications far exceed East's responsibilities and qualifications. Unlike Plaintiff, Wypasek has a supervisory role with twelve direct reports and substantially different duties than Plaintiff. In addition, the evidence shows that the bulk of Plaintiff's tenure with Cleveland Coca-Cola was spent in non-supervisory roles, contrary to Wypasek. Defendant also points out that Plaintiff struggled when given a true supervisory role, given his poor performance reviews while a night loading supervisor.[8] (R. 14-1, East Depo. at 122-123, Exh. I, PageID# 167-168; R. 15-2, Evans Decl. ¶¶8-10).

---

[8] Even if Plaintiff disagrees with his supervisor's assessment of his performance, it is well established that such disagreement does not demonstrate pretext. See *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 268-269 (6th Cir. 2010); *Johnson v. Interstate Brands Corp.*, 351 Fed. App'x 36, 41 (6th Cir. 2009) (plaintiff's disagreement with employer's application of its policy does not dispute that employer had honest belief in its reasons for discharging her); *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998) ("In other words, arguing about the accuracy of the employer's assessment is a distraction because the question is not whether the employer's reasons for a decision are '*right* but whether the employer's description of its reasons is *honest*.' ") (citation omitted) (italics in original); *Rumble v. Convergys*, No. C-1-07-979, 2010 WL 812775, at *11 (S.D. Ohio 2010) (observing that it is "the manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of his own relative performance") (citation omitted).

### 2. Non-Discriminatory Reason for Pay Differential

In the alternative, even if the court were to ignore the substantial differences between the job duties performed by Plaintiff and Wypasek and, contrary to the above-cited case law, focus solely on the commonality of job titles, Defendant would still be entitled to summary judgment. The same reasons identified above for finding that Plaintiff did not perform substantially equal work as Wypasek constitute race-neutral non-discriminatory reasons for any discrepancy in pay. Therefore, even if the court were to consider Plaintiff to have set forth a *prima facie* case, Defendant has met its burden of identifying legitimate, non-discriminatory reasons for the pay disparity. The burden shifts to Plaintiff to show that the employer's stated reasons are pretextual. *McDaniels*, 755 Fed. App'x at 469. As indicated above, Plaintiff has not filed a response to the motion for summary judgment. This court is under no obligation to search the entire record to uncover facts that could be construed as showing pretext. *In re St. Clair Clinic, Inc.*, 73 F.3d at 362. Such an endeavor would cross the line into advocacy on Plaintiff's behalf, which would be improper.

### 3. Discrimination in Terms and Conditions of Employment

Plaintiff's Amended Complaint further alleges that Defendant excluded him from meetings and denied him training because of his race. Not only has Plaintiff failed to respond to the motion for summary judgment, but his deposition is replete with little more than conclusory allegations and he fails to identify any evidence supporting his claims when asked. (*See generally* R. 14-1, East Depo. Exh. 1).

Plaintiff has claimed that Wypasek received training opportunities that Plaintiff did not and is invited to meetings to which Plaintiff is not. As already determined above, all evidence identified leads to the conclusion that there is no genuine issue of material fact on this issue, and

that Wypasek is not similarly situated.

Furthermore, Plaintiff has not identified any evidence that he received different training than Caucasian employees due to his race. (ECF No. # 14, Ex. 1 at 163-164). East cannot identify any training opportunities that were offered to Caucasian employees that he was not offered. (ECF No. # 14, Ex. 1 at 24, 28). Further, East does not know whether Wypasek received training different from the training he received. (ECF No. # 14, Ex. 1 at 29). Plaintiff also testified at his deposition that he has no idea which meetings Wypasek or other Caucasian supervisors attend. (R. 14-1, East Depo. at 163). Plaintiff agreed that he "had no idea that Wypasek or any other Caucasian supervisor were given more extensive training than [him] …." *Id*. at 163-164. When asked what facts he has to support his training-related claim, he testified "I don't have none at the time." *Id*. at 164. Plaintiff agreed that he never identified any specific training to Defendant that he believed he needed. *Id*. at 165.

Turning to Plaintiff's allegation that he was excluded from meetings on account of his race, Plaintiff, during his deposition, could not identify any specific meetings from which he was excluded, during the time he worked for Defendant, *on account of his race*. Plaintiff claimed that since 2017, he has been excluded from operations meetings, forecast meetings, sales and inventory meetings, and cadence meetings. (R. 14-1, East Depo. at 64). When asked what facts support his claim that he is not invited to sales and inventory meetings because of his race, Plaintiff responded: "I can't give you facts." (R. 14-1, East Depo. at 65). There are three Black supervisors working for Defendant, according to Plaintiff, yet he indicated that he is "the only black supervisor that's not invited." (R. 14-1, East Depo. at 65). Plaintiff also indicated that he assumed forecast meetings forecasted sales, and that he needed to be there because "I am the production guy that needs to produce for the forecast." *Id*. at 66. However, Plaintiff's assumption

conflicts with the stated purpose of the forecast meetings, which is "for the product supply team to report what products ABARTA is *receiving* in the upcoming weeks," and that Plaintiff's attendance is unnecessary because his role is unrelated to supply chain. (R. 15-2, Evans Decl. at 29). While it is not the court's role to resolve conflicts in evidence or credibility issues at the summary judgment stage, there is ample case law suggesting that mere assumptions by a plaintiff are insufficient to give rise to a genuine issue of material fact.[9] Therefore, Plaintiff has not identified any evidence in the record suggesting racial animus was a component of his exclusion from weekly forecast calls.

Furthermore, with respect to cadence meetings, Plaintiff indicated that the individuals invited to those meetings are "Jason Wypasek, **myself**, Robert Ruppe, our distribution drivers supervisors, our night loading supervisors and our finance director." (R. 14-1, East Depo. at 67-68) (emphasis added). Plaintiff, moreover, gave conflicting testimony whether certain meetings even existed prior to 2019. *Id*. at 72-74. Finally, he acknowledged that he has no knowledge about the person who organizes these meetings and sends out the invitations or why those individuals find his attendance at those meetings is not required. *Id*. at 75. Therefore, Plaintiff's allegation that the decision not to invite him to a meeting has a racial component is pure

---

[9] *See, e.g., Mangano v. Garden Fresh Rest. Corp.*, 2019 WL 175277, at *3 (M.D. Fla. Jan. 11, 2019) ("plaintiffs' assumptions that there must have been something on the floor simply because her foot slipped is insufficient to create a genuine issue of fact"); *Winzer v. Sauvey*, 2018 WL 6603875, at *6 (E.D. Wis. Dec. 15, 2018) ("Speculation, conjecture, and assumptions are insufficient to withstand summary judgment, and they are insufficient to create a genuine issue of material fact."); *Dana Corp. v. Am. Standard, Inc.*, 866 F. Supp. 1481, 1527 (N.D. Ind. 1994) (finding that plaintiff's expert's opinion concerning roll-off waste lacked adequate factual basis, and mere speculation or assumptions were insufficient to survive summary judgment); *Pacheco v. Mineta*, 2004 WL 2537400, at *4 (W.D. Tex. Sept. 14, 2004) ("Mere water-cooler rumors and unsubstantiated assumptions, without more, are insufficient to create a genuine issue of material fact.")

speculation.

Plaintiff may not rely on his allegations alone or speculation to withstand summary judgment. No genuine issues of material fact remain with respect to Plaintiff's claim that he received less training or was excluded from meetings when compared to Caucasian supervisors. Defendant, therefore, is entitled to summary judgment on these claims.

**B. Ohio § 4112.02 Claim**

In the second cause of action set forth in the Amended Complaint, Plaintiff alleges "Defendant is discriminating against [him] in respect to the terms and conditions of his employment, on the basis of race" in violation of O.R.C. § 4412. (R. 9, PageID# 52).

Under O.R.C. § 4112.02: "[i]t shall be an unlawful discriminatory practice: (A) For any employer, because of the race, color, religion, sex, military status, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."[10] Ohio Supreme Court cases "have determined that federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000(e) et seq., Title 42, U. S. Code, is generally applicable to cases involving alleged violations of R. C. Chapter 4112." *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 66 Ohio St. 2d 192, 421 N.E.2d 128 (Ohio 1981) (finding Title VII case law applicable to cases involving alleged violations of O.R.C. § 4112); *see also Kirkland v.*

---

[10] Similarly, under Title VII, it is unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

17

*St. Elizabeth Hosp. Med. Ctr.*, 34 F. App'x 174, 177 n.2 (6th Cir. 2002) (applying Title VII case law to claims under O.R.C. § 4112); *accord Sosby v. Miller Brewing Co.*, 211 Fed. Appx. 382, 386 (6th Cir. 2006).

As the court has already determined that there are no genuine issues of material fact with respect to Plaintiff's Title VII race discrimination claim and that Defendant is entitled to summary judgment, the same analysis applies to Plaintiff's state law claim. Consequently, it also recommended that the second cause of action be dismissed and judgment entered in Defendant's favor.

## V. Conclusion

For the foregoing reasons, it is recommended that Defendant's Motion for Summary Judgment (R. 15) be GRANTED in its entirety and the case dismissed.

s/ *David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: January 4, 2022

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. **28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.** *See Berkshire v. Beauvais,* 928 F.3d 520, 530-31 (6th Cir. 2019).